# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| WAKAYA PERFECTION, LLC, ET AL., <br><br>       Plaintiffs/Appellants, <br><br>   v. <br><br> YOUNGEVITY INTERNATIONAL CORP. ET AL., <br><br>       Defendants/Appellees. | Appeal No. 17-4178 <br><br><br> (ORAL ARGUMENT REQUESTED) |

On Appeal from
The United States District Court for the District of Utah
(Civil No. 2:16-cv-00315 - Judge David Nuffer)

## APPELLANTS' OPENING BRIEF

Jonathan O. Hafen (UT 6096)
Jonathan R. Schofield (UT 8274)
Michael S. Anderson (UT 13976)
Cynthia D. Love (UT 14703)
PARR BROWN GEE & LOVELESS
101 South 200 East, Suite 700
Salt Lake City, UT 84111
Telephone:  (801) 532-7840
jhafen@parrbrown.com
jschofield@parrbrown.com
manderson@parrbrown.com
clove@parrbrown.com
*Attorneys for Plaintiffs/Appellants*

## <u>TABLE OF CONTENTS</u>

CORPORATE DISCLOSURE STATEMENT ........................................................1

PRIOR OR RELATED APPEALS.....................................................................1

STATEMENT OF JURISDICTION....................................................................2

STATEMENT OF ISSUES ..............................................................................2

STATEMENT OF THE CASE...........................................................................2

    Nature of the Case.....................................................................................2

    Course of Proceedings ..............................................................................2

    Disposition Below.....................................................................................5

STATEMENT OF THE FACTS ........................................................................5

SUMMARY OF ARGUMENT .........................................................................8

STANDARD OF REVIEW ..............................................................................9

ARGUMENT ...............................................................................................10

STATEMENT OF COUNSEL AS TO ORAL ARGUMENT ................................21

CONCLUSION .............................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401 (10th Cir. 1995)...........12

*American Bulder's Ass'n v. Au-Yang*, 276 Cal. Rptr. 262 (Cal. Ct. App. 1990).....19

*Anderson v. Kitchen*, 389 Fed. App'x 838 (10th Cir. 2010)....................................12

*Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793 (10th Cir. 1995) ........................9

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .................17

*BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195 (10th Cir. 2016) ...............................................................................................................20

*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) ................................................................................................................ 2, 5, 11

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir. 2006)..............................................18

*Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 70 Cal. Rptr. 3d 605 (Cal. Ct. App. 2008) ................................................................................................18

*D.A. Osguthorpe Family P'ship v. ADC Utah, Inc.*, 705 F.3d 1223 (10th Cir. 2013) ...................................................................................................................12

*El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161 (10th Cir. 2016) .....................9

*Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246 (10th Cir. 2015)....................9

*Fox v. Maulding*, 16 F.3d 1079 (10th Cir. 1994)...................... 10, 11, 12, 13, 14, 16

*Hartford Acc. & Indem. Co. v. Margolis*, 956 F.2d 1166 (9th Cir. 1992)...............15

*Jacks v. CMH Homes, Inc.*, 856 F.3d 1301 (10th Cir. 2017) .................... 17, 18, 20

*John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543 (1964) .................................18

*Life-Link Int'l v. Lalla*, 902 F.2d 1493 (10th Cir. 1990) ........................................12

*MacIntyre v. JP Morgan Chase Bank*, 664 Fed. App'x 806 (10th Cir. 2016) ........12

*MedSpring Grp. Inc. v. Atlantic Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018 (D. Utah Mar. 7, 2006) ............................................................. 13, 15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983) ... 11, 12

*O'Hare Int'l Bank v. Lambert*, 459 F.2d 328 (10th Cir. 1972) ...............................12

*Pike Co. v. Universal Concrete Prods., Inc.*, __ F. Supp. 3d __, 2018 WL 324372 (W.D.N.Y. 2018) .........................................................................................15

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177 (10th Cir. 2015) 12, 15

*Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996) ..........................................10

*Ramos v. Westlake Servs. LLC*, 195 Cal. Rptr. 3d 34 (Cal. Ct. App. 2015)............18

*Retail Clerks Union v. L. Bloom Sons Co.*, 344 P.2d 51 (Cal. App. 1959) .............19

*Rienhardt v. Kelly*, 164 F.3d 1296 (10th Cir. 1999) ............................... 9, 10, 11, 12

*Unimart v. Superior Court*, 82 Cal. Rptr. 249 (Cal. Ct. App. 1969) .......................18

*United States v. City of Las Cruces*, 289 F.3d 1170 (10th Cir. 2002) .............. 11, 12

*Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001 (10th Cir. 2013)..............17

*Youngevity International Corp. v. Todd Smith*, No. 3:16-cv-704 (S.D. Cal) ........7, 8

*Youngevity v. Andreoli*, No. 18-55031 (9th Cir.).......................................................1

**Statutes**

28 U.S.C. § 1291 ........................................................................................................2

28 U.S.C. § 1332 ........................................................................................................2

CAL. CIV. CODE § 1550 .............................................................................................18

CAL. CIV. CODE § 1565.............................................................................................18

**Rules**

Federal Rule of Civil Procedure 12(b)(2) ..................................................................4

Federal Rule of Civil Proceudre 12(b)(6) ..................................................................4

Plaintiffs and Appellants Wakaya Perfection, LLC ("Wakaya"), Todd Smith, Blake Graham, Dave Pitcock, Barb Pitcock, Andre Vaughn, and Total Nutrition, Inc. ("TNT") (collectively, "Plaintiffs" or "Appellants"), by and through their undersigned counsel, respectfully submit Appellants' Opening Brief, appealing the District Court's Memorandum Decision and Order granting the Motion to Dismiss filed by Defendants Youngevity International, Inc. ("Youngevity"), Steve Wallach, Michelle Wallach, and Dave Briskie (collectively, "Defendants" or "Appellees").

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellants make the following disclosures as a nongovernmental corporate entity: Wakaya is a Utah limited liability company with no parent corporation, and no publicly held corporation owns ten percent or more of its stock. Wakaya is a single-member, Utah limited liability company, owned by Todd Smith. Mr. Smith is a citizen of Utah. TNT is a Utah corporation with no parent corporation, and no publicly held corporation owns ten percent or more of its stock.

## PRIOR OR RELATED APPEALS

There are no prior or related appeals in this Circuit. An interlocutory appeal involving the same parties is currently pending in the United States Court of Appeals for the Ninth Circuit. *See Youngevity v. Andreoli*, No. 18-55031.

1

## STATEMENT OF JURISDICTION

Plaintiffs alleged multiple contract and tort claims against Defendants. The District Court had diversity jurisdiction pursuant to 28 U.S.C. § 1332. Diversity jurisdiction was appropriate because the parties are completely diverse and the amount in controversy is greater than $75,000. *See id.*

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1291. The District Court entered final judgment on November 7, 2017, disposing of all claims. Plaintiffs filed a timely Notice of Appeal on November 9, 2017.

## STATEMENT OF ISSUES

**Issue No. 1 –** Whether the District Court erred in dismissing the action pursuant to the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), in the absence of a parallel state proceeding and by misapplying the factors relevant thereto.

**Issue No. 2 –** Whether the District Court erred in concluding that the arbitrator would determine the arbitrability of Wakaya's claims when Wakaya is not a party to any contract with Defendants.

## STATEMENT OF THE CASE

### Nature of the Case

This case involves Defendants' breaches of contract, tortious interference with prospective and existing business relationships, and defamatory statements about Plaintiffs. The majority of Plaintiffs are former independent distributors of

Youngevity, a multi-level marketing company. After becoming disenchanted with Youngevity's management and business practices, Todd Smith left Youngevity to form a new company, Wakaya. Upon learning of Wakaya's formation, Youngevity management unilaterally and wrongfully terminated the distributorships of any Youngevity distributor perceived to be associated with Mr. Smith or Wakaya, embarked on an organized campaign to defame and destroy Wakaya in its infancy, and retaliated against anyone perceived as disloyal to Youngevity.

Plaintiffs filed suit in Utah seeking to stop Youngevity's tortious behavior. Approximately one week after Plaintiffs filed suit, Defendants filed a second action in the Southern District of California and moved to dismiss the first Utah action. While the motion to dismiss the Utah action was pending for over a year, the California action proceeded through discovery and summary judgment briefing. Eventually, the District Court granted Defendants' motion to dismiss, citing the progress in the second California action and concluding that Plaintiffs' claims were subject to arbitration.

**<u>Course of Proceedings</u>**

On March 17, 2016, Wakaya filed a Complaint against Youngevity in the Fourth Judicial District Court in and for Utah County, State of Utah, alleging a number of business tort claims ("Utah Action"). [Joint Appendix ("JA") 15-64.] Approximately one week later, Youngevity filed a separate action against Plaintiffs

3

and additional parties in the United States District Court for the Southern District of California ("California Action"). [JA 65-108.] On April 15, 2016, Plaintiffs filed a First Amended Complaint in the Utah Action, joining additional parties and asserting additional contract and tort claims. [JA 109-31.] On April 19, 2016, Defendants removed the Utah Action to the United States District Court for the District of Utah. [JA 132-37.]

On April 21, 2016, Defendants moved to dismiss the Utah Action pursuant to Rules 12(b)(2) and 12(b)(6) of the *Federal Rules of Civil Procedure* and the Federal Arbitration Act (the "Motion"). [JA 138-215.] Defendants argued that the District Court lacked personal jurisdiction over Steve Wallach, Michelle Wallach, and Dave Briskie (the "Individual Defendants"), that Wakaya had failed to adequately plead its tort claims, and that the contract claims were subject to binding arbitration. [JA 138-60.] Plaintiffs filed a Memorandum in Opposition to the Motion on May 26, 2016. [JA 216-349.] Defendants then filed Reply Memorandum on June 10, 2016. [JA 350-80.] The Motion was submitted to the District Court for decision on July 5, 2016. [JA 381-84.]

Although the Utah Action was the first case filed in this matter, the second California Action continued to proceed for over sixteen months while the parties waited for the District Court to rule on the Motion. On November 7, 2017, without the benefit of oral argument, the District Court issued a Memorandum Decision

4

and Order, granting Defendants' Motion and dismissing Plaintiffs' claims (the "Order"). [JA 385-99.]

Now on appeal, Plaintiffs respectfully request that this Court reverse the District Court's Order and remand this case for further proceedings.

**Disposition Below**

In granting Defendants' Motion and dismissing Plaintiffs' claims, the District Court ruled that Plaintiffs' claims—including claims belonging to Wakaya, a nonsignatory to any agreement with Defendants—were subject to binding arbitration pursuant to the arbitration provision contained in Youngevity's Policies and Procedures, which governs the relationship between Youngevity and its own distributors. [JA 392-95.] Alternatively, the District Court declined to exercise its jurisdiction pursuant to the doctrine announced in *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). [JA 395-97.] The District Court did not address the merits of Defendants' arguments under Rules 12(b)(2) or 12(b)(6). [JA 395, 397.] These rulings not only deprive Plaintiffs of their first-filed forum of choice but also risk potentially impacting the California Action.

<u>**STATEMENT OF THE FACTS**</u>

This case revolves around Todd Smith's decision to leave Youngevity and start his own business, Wakaya. [JA 113-15.] After nearly two decades as an

independent distributor of Youngevity products, Mr. Smith became disillusioned with the behavior of Youngevity's management. [JA 113-15, 217, 266.] Eventually, Mr. Smith sold his interest in his Youngevity distributorship and started a new company, Wakaya, marketing and selling high-end health and wellness products unrelated to any products sold by Youngevity at that time. [JA 113-15, 217, 266.]

Almost immediately after Youngevity's management team learned of Wakaya's existence, they began a campaign of threats and intimidation designed to deter Youngevity distributors from joining Wakaya either in addition to or in lieu of Youngevity. [JA 115-19, 219-20, 266.] Youngevity's management also made a number of false and defamatory statements about Todd Smith, Wakaya, and other individuals associated with Mr. Smith or Wakaya. [JA 115-19, 219-20, 267-68.] As part of Youngevity's campaign to destroy Wakaya, Youngevity management summarily and wrongfully terminated the distributorships of any Youngevity distributor they suspected of being associated with Wakaya—despite Youngevity's Policies and Procedures expressly allowing Youngevity distributors to be distributors for other companies (as Youngevity has since conceded). [JA 219-20, 266-67.] Youngevity then publicized such terminations in an effort to dissuade other distributors from joining Wakaya. [JA 219-20, 267-68, 279-82, 330-33.]

On March 17, 2016, Wakaya filed the Utah Action against Youngevity in Utah state court, alleging that Youngevity's actions in threatening and terminating distributors constituted tortious interference and unfair competition. [JA 15-64.] Approximately one week later, Youngevity initiated the California Action against Plaintiffs and other parties. [JA 65-108.] On April 15, 2016, Wakaya filed its First Amended Complaint in the Utah Action, adding additional factual details about Wakaya's claims, joining the other Plaintiffs, and asserting new contract and tort claims on behalf of the newly joined Plaintiffs. [JA 109-31.] The First Amended Complaint also joined the Individual Defendants. [JA 109-31.]

On April 19, 2016, Defendants removed the Utah Action. [JA 132-37.] On April 21, 2016, Defendants filed the instant Motion. [JA 138-215.] During the sixteen months the Motion was pending before the District Court, the California Action proceeded through discovery and recently concluded summary judgment briefing. [JA 397 n.70; *see also* Scheduling Order Re: Parties' Motions for Summary Judgment, ECF No. 263, *Youngevity International Corp. v. Todd Smith*, No. 3:16-cv-704 (S.D. Cal).]

## SUMMARY OF ARGUMENT

At issue in this appeal are two erroneous rulings by the District Court entered without the benefit of either adversarial briefing or oral argument.[1]

First, in dismissing Plaintiffs' claims, the District Court raised sua sponte whether the action was subject to dismissal under the *Colorado River* doctrine. [JA 395 (citing *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)).] Because no party had briefed the issue and no hearing was held, the District Court proceeded without the benefit of either and ultimately applied the *Colorado River* doctrine erroneously under the facts of this case.

Second, also lacking briefing and oral argument, the District Court erred in ruling that the issue of whether Wakaya's claims were subject to arbitration was properly reserved for an arbitrator. [JA 393.] Although the District Court acknowledged that Wakaya was never a signatory to any agreement with Defendants containing an arbitration provision, it nevertheless dismissed Wakaya's

---

[1] Plaintiffs do not challenge the District Court's conclusion that claims asserted by Todd Smith, Blake Graham, Dave Pitcock, Barb Pitcock, Andre Vaughn, and TNT (collectively, "Distributor Plaintiffs") were previously subject to arbitration. The District Court in the California Action also came to the same conclusion but further held that Youngevity and the Individual Defendants had waived any right to arbitration by pursuing litigation against these individuals. *See* Order Denying and Granting in Part Counterclaim Defendants' Anti-SLAPP Motion to Strike and Motion to Dismiss 19-22, ECF No. 330, *Youngevity International Corp. v. Todd Smith*, No. 3:16-cv-704 (S.D. Cal.). Defendants did not appeal the California court's finding of waiver. Thus, any question as to the arbitrability of Distributor Plaintiffs' claims is now moot.

claims, concluding that an arbitrator would determine their arbitrability. [JA 393-94.] The District Court also suggested, without so concluding, that Wakaya's claims were likely subject to arbitration because they were "intimately founded in and factually intertwined with" the other arbitrable claims. [JA 394.] In dismissing Wakaya's claims, the District Court erred by misapplying relevant case law and making certain factual assumptions inappropriate at the motion-to-dismiss stage.

## STANDARD OF REVIEW

This Court reviews a district court's decisions to abstain under the *Colorado River* doctrine for abuse of discretion. *Rienhardt v. Kelly*, 164 F.3d 1296, 1302 (10th Cir. 1999). "But a district court always abuses its discretion when it errs on a legal question, and [the appellate court] decide[s] the presence or absence of legal error de novo." *El Encanto, Inc. v. Hatch Chile Co.*, 825 F.3d 1161, 1162 (10th Cir. 2016); *see also Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) ("A district court abuses its discretion when it (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all, (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard, or (3) relies on clearly erroneous factual findings.").

This Court reviews de novo a district court's grant of a motion to compel arbitration. *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 796 (10th Cir. 1995).

9

**ARGUMENT**

**I.**    ***Colorado River* Does Not Apply to Two Federal Actions, but Even If the Doctrine Did Apply, the District Court Erred in Its Application.**

In dismissing Plaintiffs' claims, the District Court erroneously abstained under the *Colorado River* doctrine. [JA 395.] More specifically, the *Colorado River* doctrine does not apply under the circumstances in this case because there is no parallel state-court litigation. But even if the doctrine were to apply to the two federal actions here, the District Court did not conduct the careful balancing on the record required under the governing standards.

"The *Colorado River* doctrine controls when deciding . . . whether a district court should have stayed or dismissed a federal suit pending the resolution of a parallel <u>state court</u> proceeding." *Rienhardt*, 164 F.3d at 1302 (emphasis added); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 717 (1996) (indicating that the *Colorado River* doctrine allows federal courts to refrain from hearing "cases which are duplicative of a pending <u>state</u> proceeding" (emphasis added)). *Colorado River* does not apply based solely on two *federal* proceedings, as the existence of both state and federal proceedings is a threshold requirement. *Fox v. Maulding*, 16 F.3d 1079, 1081 (10th Cir. 1994) ("[A] federal court <u>must first</u> determine whether the state and federal proceedings are parallel." (emphasis added)).

Though district courts have discretion to refrain from exercising jurisdiction, this discretion "must be exercised under the relevant standard prescribed by the

10

Supreme Court." *Id.* (internal quotation and alteration marks omitted). Indeed, the

Supreme Court has cautioned that "the virtually unflagging obligation of the

federal courts to exercise the jurisdiction given them" requires that courts abstain

only in "exceptional" circumstances. *Colorado River*, 424 U.S. at 817-18; *accord*

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983)

("[O]ur task . . . is not to find some substantial reason for the *exercise* of federal

jurisdiction by the district court; rather, the task is to ascertain whether there exist

'exceptional' circumstances, the 'clearest of justifications,' that can suffice under

*Colorado River* to justify the surrender of that jurisdiction."); *United States v. City*

*of Las Cruces*, 289 F.3d 1170, 1182 (10th Cir. 2002) ("Because federal courts have

a virtually unflagging obligation to exercise the jurisdiction given them, a district

court should decline jurisdiction under *Colorado River* only in exceptional

circumstances." (internal quotation and alteration marks omitted)); *Rienhardt*, 164

F.3d at 1302 ("[T]he appropriate circumstances for deferral under the *Colorado*

*River* Doctrine are considerably more limited than the circumstances appropriate

for abstention and must be exceptional." (internal quotation marks omitted)).

The District Court erred in applying the *Colorado River* doctrine to this case

because it involves two federal proceedings—not a federal *and state* proceeding.

Because the Utah Action and the California Action were both in federal court, the

*Colorado River* doctrine is inapplicable. Plaintiffs are unaware of any decision of

this Court applying the *Colorado River* doctrine in the absence of a parallel state proceeding. *See, e.g.*, *MacIntyre v. JP Morgan Chase Bank*, 664 Fed. App'x 806 (10th Cir. 2016) (unpublished) (state and federal proceeding); *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177 (10th Cir. 2015) (same); *D.A. Osguthorpe Family P'ship v. ADC Utah, Inc.*, 705 F.3d 1223 (10th Cir. 2013) (same); *Anderson v. Kitchen*, 389 Fed. App'x 838 (10th Cir. 2010) (unpublished) (same); *City of Las Cruces*, 289 F.3d at 1170 (same); *Rienhardt*, 164 F.3d at 1302 (same); *Allen v. Bd. of Educ., Unified Sch. Dist. 436*, 68 F.3d 401 (10th Cir. 1995) (same); *Fox*, 16 F.3d at 1081 (same); *Life-Link Int'l v. Lalla*, 902 F.2d 1493 (10th Cir. 1990) (same). The Supreme Court has stated that "it would be <u>a serious abuse of discretion</u>" to apply the *Colorado River* doctrine unless "parallel state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." *Moses H. Cone*, 460 U.S. at 28 (emphasis added). Thus, the District Court erred in applying the *Colorado River* doctrine in this case.

Even if the existence of two *federal* cases were a basis for dismissal, it would be improper and inequitable to deprive Plaintiffs of their forum of choice—where Plaintiffs were the first to file—solely because the California Action proceeded for sixteen months while resolution of the Motion was delayed. *See O'Hare Int'l Bank v. Lambert*, 459 F.2d 328, 331 (10th Cir. 1972) (discussing the first-to-file rule in the context of concurrent federal cases); *MedSpring Grp. Inc. v.*

*Atlantic Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006) ("When a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used.").

Instead, after finding both federal and state proceedings exist, a federal court must first determine whether the proceedings are truly "parallel" and "then determine whether deference to state court proceedings is appropriate under the particular circumstances." *Fox*, 16 F.3d at 1081-82. This Court has identified "a nonexclusive list of factors for courts to consider in deciding whether 'exceptional circumstances' exist to warrant deference to parallel state proceedings," such as: "(1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; . . . (4) the order in which the courts obtained jurisdiction"; (5) "the vexatious or reactive nature of either the federal or the state action . . . ; [6] whether federal law provides the rule of decision . . . ; [7] the adequacy of the state court action to protect the federal plaintiff's rights"; and (8) "whether the party opposing abstention has engaged in impermissible forum-shopping." *Id.* at 1082. Because "[n]o single factor is dispositive," a district "court should engage in a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." *Id.* "Indeed, since only the clearest of justifications will warrant dismissal, any doubt should be

resolved in favor of exercising federal jurisdiction." *Id.* (internal quotation marks, alteration marks, and citations omitted).

Unfortunately, because the District Court raised and applied the *Colorado River* doctrine sua sponte without the benefit of briefing or oral argument, the foregoing analysis was not properly performed by either the parties or the District Court. Nevertheless, this Court has previously stated that, "if we are to conduct any meaningful review of a district court's exercise of discretion under the *Colorado River* doctrine, the court must make its findings about the parallel nature of the state and federal proceedings and the balance of the factors *on the record*." *Id.*

Although the District Court briefly evaluated some of the *Colorado River* factors, its analysis was incomplete and ultimately inaccurate. [*See* JA 395-97.] As an initial matter, the District Court made no findings as to whether the Utah and California Actions were, in fact, "parallel." And factors five through eight were not addressed at all.

In assessing the first three factors, the District Court appears to have adopted an erroneous presumption *against* its own jurisdiction. To the contrary, the *Colorado River* doctrine is inapplicable *unless* a "careful balancing of the important factors . . . heavily weighted in favor of the exercise of jurisdiction" counsels strongly against federal jurisdiction. *Fox*, 16 F.3d at 1082. Because of the heavy presumption in favor of federal jurisdiction, any factors that are considered

14

"neutral" actually weigh *against abstention. See Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1189 (10th Cir. 2015).

Regarding the fourth factor, the District Court also erred in finding that the court in the California Action exercised its jurisdiction first where the California Action was filed 27 days before the Utah Action was removed to federal court. [JA 397.] But the date of removal is immaterial to the first-to-file analysis. Rather, "[w]hen a state action is removed to federal court, for first-to-file purposes, the state court filing date is the date used." *MedSpring Grp. Inc. v. Atlantic Healthcare Grp., Inc.*, No. 1:05 CV 115, 2006 WL 581018, at *3 (D. Utah Mar. 7, 2006); *accord Hartford Acc. & Indem. Co. v. Margolis*, 956 F.2d 1166, at *1 (9th Cir. 1992) (unpublished) ("[The] suggestion that the 'first to file' rule should not be applied to the time of filing of the state court action later removed to federal court is not compelling. When an action is commenced in state court and removed to federal court, the action remains the same. It is simply pending in a different court after removal than before."); *Pike Co. v. Universal Concrete Prods., Inc.*, __ F. Supp. 3d __, 2018 WL 324372, at *9 (W.D.N.Y. 2018) (collecting cases). Here, there is no dispute that Plaintiffs filed their claims first in Utah, and it was improper for the District Court to deprive Plaintiffs of their choice of forum.

Thus, the District Court's analysis under *Colorado River* was incomplete and misapplied governing law. Though the doctrine does not apply to two federal

15

proceedings, if *Colorado River* were to apply at all, a full analysis—carefully evaluating and balancing all of the governing standards—must be performed on remand.[2]

## II.    The Arbitrability of a Nonsignatory's Claims Must Be Determined by the Court, Not an Arbitrator.

Although the District Court declined to exercise jurisdiction pursuant to the *Colorado River* doctrine, it nevertheless exercised that jurisdiction to reach the merits of the arbitrability of Plaintiffs' claims. To abstain from exercising jurisdiction but still reach the merits of the arbitrability question was problematic for at least two reasons. First, as the District Court recognized, the progress in the subsequent California Action raised the prospect that Defendants had waived any right to arbitrate. [JA 395 n.62.][3] Despite recognizing that potential for waiver, the District Court did not request further briefing or otherwise seek to ascertain changes in circumstances during the sixteen months the Motion was pending. Second, the District Court erred in concluding that the arbitrability of Wakaya's claims should be decided by the arbitrator. Because Wakaya never signed any agreement with Defendants, the threshold issue of whether Wakaya could be

---

[2] And rather than dismissal, this Court has noted that a stay is preferable in *Colorado River* cases. *See Fox*, 16 F.3d at 1083 ("We think the better practice is to stay the federal action pending the outcome of the state proceedings.").

[3] *See supra* note 1.

forced to arbitrate its own claims against Defendants must be decided by the court, not an arbitrator.

"Arbitration is a matter of contract." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." *Id.* Although federal law generally applies a presumption in favor of arbitrability, that presumption does not apply "when the dispute is whether there is a valid and enforceable arbitration agreement in the first place." *Jacks v. CMH Homes, Inc.*, 856 F.3d 1301, 1304 (10th Cir. 2017). The party seeking to compel arbitration has the burden of demonstrating "that the arbitration agreement applies to [a] nonsignatory plaintiff[]." *Id.*

"[T]o determine whether a party has agreed to arbitrate a dispute," courts in this Circuit "apply ordinary state-law principles that govern the formation of contracts." *Walker v. BuildDirect.com Techs., Inc.*, 733 F.3d 1001, 1004 (10th Cir. 2013); *see also Jacks*, 856 F.3d at 1304-05 (applying Oklahoma law to determine whether nonsignatory plaintiffs could be required to submit their claims to arbitration). Under California law, which the signatory parties agree governs the agreement, the threshold issue when considering a motion to compel arbitration "is to determine whether the parties have entered into an agreement to arbitrate their claims." *Ramos v. Westlake Servs. LLC*, 195 Cal. Rptr. 3d 34, 42 (Cal. Ct. App.

17

2015). But "[i]t goes without saying that a contract cannot bind a nonsignatory." *Crowley Maritime Corp. v. Boston Old Colony Ins. Co.*, 70 Cal. Rptr. 3d 605, 611 (Cal. Ct. App. 2008); CAL. CIV. CODE §§ 1550, 1565 (requiring mutual assent to the formation of a contract). Importantly, when considering the question of arbitrability of a nonsignatory's claims, the threshold question "is not whether a particular issue is arbitrable, but whether a particular *party* is bound by the arbitration agreement." *Crowley*, 70 Cal. Rptr. 3d at 608 (quoting *Comer v. Micor, Inc.*, 436 F.3d 1098, 1104 n.11 (9th Cir. 2006)).

Under California law, "an arbitrator has <u>no power</u> to determine the rights and obligations of one who is not a party to the arbitration agreement or arbitration proceedings." *Unimart v. Superior Court*, 82 Cal. Rptr. 249, 253 (Cal. Ct. App. 1969) (emphasis added). So "[w]hether or not the arbitration provisions are operative against a party who has not signed the arbitration agreement [Wakaya] depends upon the status of such party and its relation to the [signatory] who signed the agreement [Youngevity]." *Id.* "This involves a question of 'substantive arbitrability' <u>which is to be determined by the court</u>." *Id.* (emphasis added); *accord John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 547 (1964) ("The duty to arbitrate being of contractual origin, a compulsory submission to arbitration cannot precede <u>judicial determination</u> that the . . . agreement does in fact create such a duty." (emphasis added)); *Jacks*, 856 F.3d at 1305 ("An agreement for the

18

submission of an issue to arbitrators is a prerequisite to the commencement of a valid arbitration agreement." (internal quotation marks omitted)). Critically, this "question must be decided by the court in an appropriate proceeding on the basis of a factual determination." *American Bulder's Ass'n v. Au-Yang*, 276 Cal. Rptr. 262, 266 (Cal. Ct. App. 1990) (original emphasis and internal quotation marks omitted).

California courts have specifically rejected the argument that the question of the arbitrability of a nonsignatory's claims can be delegated to an arbitrator. *See, e.g.*, *Au-Yang*, 276 Cal. Rptr. at 267. In *Retail Clerks Union v. L. Bloom Sons Co.*, 344 P.2d 51 (Cal. App. 1959), the court specifically rejected as "patently absurd" the "proposition that two parties can by contract effectively stipulate for the mode of determination of the rights of a third party who has not only not assented to such a mode of determination but who also is not even accorded an opportunity to participate in such determination." *Id.* at 53. "If an arbitrator, rather than a trial court, were to determine whether an arbitration provision were operative against a nonsignatory, a stranger to the agreement might be subjected to and be bound by an arbitration to which such stranger had not consented." *Au-Yang*, 276 Cal. Rptr. at 267. Thus, even if an arbitration provision broadly delegates authority to an arbitrator to determine arbitrability, the question of whether a nonsignatory can be bound to an arbitration agreement must first be determined by the court.

19

Without briefing or oral argument, the District Court held that an arbitrator should determine the arbitrability of Wakaya's claims. [JA 393.] In so ruling, the District Court did not apply the state-law principles required by this Court's controlling precedent. *See Jacks*, 856 F.3d at 1304. Under California law, it is the province of *the court*, not an arbitrator, to determine whether a nonsignatory to an arbitration agreement can nevertheless be required to arbitrate. The District Court therefore erred in holding that the arbitrator should decide the arbitrability of Wakaya's claims.

Moreover, any finding that Wakaya is bound by the arbitration provision would be inappropriate at this motion-to-dismiss stage, where a district court must "accept the factual allegations in the complaint as true and [] resolve all reasonable inferences in [Wakaya's] favor." *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1199 n.2 (10th Cir. 2016). Although various theories inapplicable here could bind a nonsignatory to an arbitration agreement, application of such theories still require a fact-intensive analysis inappropriate at this motion-to-dismiss stage. Taking the facts in the Complaint and all reasonable inferences in Wakaya's favor, the District Court could not have concluded that Wakaya could be compelled to arbitrate its own independent claims against Defendants.

## **STATEMENT OF COUNSEL AS TO ORAL ARGUMENT**

Plaintiffs respectfully request oral argument to address specialized areas of the law at issue in this case, the relatively complex procedural and factual history, and matters of specific concern to the Panel.

## **CONCLUSION**

For the reasons stated herein, Plaintiffs respectfully request that this Court: (1) reverse the District Court's Order by ruling that (a) the *Colorado River* doctrine is inapplicable in these circumstances and (b) the arbitrability of Wakaya's claims cannot be reserved for an arbitrator; and (2) remand the case for further proceedings, including an analysis under the first-to-file rule.

DATED this 22nd day of March 2018.

PARR BROWN GEE & LOVELESS

/s/ Cynthia D. Love
Jonathan O. Hafen
Jonathan R. Schofield
Michael S. Anderson
Cynthia D. Love
*Attorneys for Plaintiffs/Appellants*

101 S. 200 E., Suite 700
Salt Lake City, Utah 84111
(801) 532-7840
clove@parrbrown.com

**CERTIFICATE OF SERVICE TO APPELLANTS' OPENING BRIEF**

I hereby certify that on March 22, 2018, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification of such filing to the following:

Jonathan W. Emord
EMORD & ASSOCIATES
2730 South Val Vista Drive
Building 6, Suite 133
Gilbert, Arizona 85295
jemord@emord.com

DATED this 22nd day of March, 2018.

PARR BROWN GEE & LOVELESS

/s/ *Cynthia D. Love*
Jonathan O. Hafen
Jonathan R. Schofield
Michael S. Anderson
Cynthia D. Love

## CERTIFICATE OF DIGITAL SUBMISSION FOR APPELLANTS' OPENING BRIEF

I hereby certify that with respect to the foregoing:

(1)     all required privacy redactions have been made per 10th Cir. R. 25.5;

(2)     if required to file additional hard copies, that the ECF submission is an exact copy of those documents;

(3)     the digital submissions have been scanned for viruses with the most recent version of a commercial virus scanning program, Webroot SecureAnywhere, Version 9.0.19.43, last updated on March 22, 2018, and according to the program are free of viruses.

(4)     the pleading complies with applicable type volume limited per Fed. R. App. P. 32(g)(1).

DATED this 22nd day of March, 2018.

PARR BROWN GEE & LOVELESS

/s/ *Cynthia D. Love*
Jonathan O. Hafen
Jonathan R. Schofield
Michael S. Anderson
Cynthia D. Love

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| WAYAKA PERFECTION, LLC, a Utah limited liability company; TODD SMITH, an individual; BLAKE GRAHAM, an individual; DAVE PITCOCK, an individual; BARB PITCOCK, an individual; ANDRE VAUGHN, an individual; TOTAL NUTRITION, INC. dba TNT, a Utah corporation,<br><br>                    Plaintiffs,<br><br>v.<br><br>YOUNGEVITY INTERNATIONAL, INC., a California corporation; STEVE WALLACH, an individual; MICHELLE WALLACH, an individual; DAVE BRISKIE, an individual,<br><br>                    Defendants. | **MEMORANDUM DECISION AND ORDER:**<br>• **GRANTING [20] DEFENDANTS' MOTION TO DISMISS AND**<br>• **TERMINATING [27] PLAINTIFFS' MOTION FOR LEAVE TO AMEND**<br><br>Case No. 2:16-cv-00315-DN<br><br>District Judge David Nuffer |

Plaintiff Wayaka Perfection, LLC ("Wayaka") and defendant Youngevity International, Inc. ("Youngevity") are both multi-level marketing companies. Wayaka and Youngevity market their products through their networks of distributors who recruit others who in turn may become distributors for the company.

Wayaka's president and founder, Todd Smith, and the other plaintiffs, Dave Pitcock, Barb Pitcock, Andre Vaughn, Blake Graham, and Total Nutrition, Inc. dba TNT (the "Distributor Plaintiffs," and together with Wayaka, "Plaintiffs"), have been distributors for Youngevity. When Distributor Plaintiffs became involved with Wayaka, Youngevity unilaterally terminated their distributorships and withheld their commissions.

Plaintiffs contend that Defendants have breached their contracts with the Distributor Plaintiffs and violated statutory and common laws by terminating their distributorships and

interfering with Wayaka's business.[1] Youngevity and its officers and directors, defendants Steve Wallach, Michelle Wallach, and Dave Briskie (together with Youngevity, "Defendants"), contend that Youngevity has acted within its rights under its Distributor Agreement and Policies and Procedures.

Defendants filed a Motion to Dismiss and/or Compel Arbitration (the "Motion to Dismiss").[2] Plaintiffs opposed the Motion to Dismiss (the "Opposition").[3] Defendants move to dismiss on three bases:[4]

1. Plaintiffs' claims are subject to a binding arbitration clause in Youngevity's Policies and Procedures;

2. the individual defendants are not subject to personal jurisdiction in the District of Utah; and

3. Plaintiffs' causes of action in tort fail to state a claim under Rule 12(b)(6).[5]

The Motion to Dismiss is GRANTED. The Youngevity arbitration clause requires all of Distributor Plaintiffs' claims to be decided by arbitration in San Diego, California, before the American Arbitration Association (the "AAA"), and Wayaka's claims are based on the same facts and inherently inseparable from Distributor Plaintiffs' claims. Moreover, this action is duplicative of ongoing litigation in the Southern District of California, which includes the same parties and claims.[6] For these reasons, the case is DISMISSED. Personal jurisdiction over the individual defendants is moot because the court will not exercise jurisdiction.

---

[1] First Amended Complaint (the "Complaint"), attached to Notice of Removal at pp. 62–84, docket no. 3, filed April 19, 2016.

[2] Docket no. 20, filed April 21, 2016.

[3] Docket no. 26, filed May 26, 2016.

[4] *Id.*

[5] Fed. R. Civ. P. 12(b)(6).

[6] *Youngevity International, Corp. v. Smith et al*, 3:16-cv-00704-BTM-JLB (S.D. Cal.) (the "California Federal Action").

In the same time frame as Defendants' Motion to Dismiss, Plaintiffs filed a Motion for

Leave to Amend (the "Motion to Amend"), seeking to amend their First Amended Complaint to

add new claims for defamation, false light, and business disparagement.[7] Defendants opposed

the Motion to Amend.[8] Because Defendants have challenged the proposed new claims based on

futility, whether to permit the amendment requires analysis of the merits of the claims.  The

futility of the proposed claims is a matter for arbitration. Accordingly, the Motion to Amend[9] is

TERMINATED without a decision on the merits.

**Table of Contents**

Background .................................................................................................................................... 3
    The Nature of the Dispute ........................................................................................................ 3
    The California Federal Action ................................................................................................. 6
Discussion ...................................................................................................................................... 8
    Plaintiffs' Claims Are Subject to an Arbitration Agreement. ................................................ 8
        The Arbitrator Will Determine Arbitrability of Wayaka's Claims ........................ 9
    Plaintiffs' Claims Are Dismissed to Avoid Duplicative Litigation. ................................. 11
    Personal Jurisdiction Is Moot. .............................................................................................. 13
    No Attorneys' Fees or Costs Are Awarded. ......................................................................... 13
    The Motion to Amend Is Terminated. .................................................................................. 14
Order  ........................................................................................................................................... 15

# BACKGROUND

## The Nature of the Dispute

Defendant Youngevity markets a broad range of consumer products, including dietary

supplements, coffee, food products, cosmetics, clothing, and jewelry.[10] The Distributor Plaintiffs

each have directly or indirectly held distributorships with Youngevity. Barb and Dave Pitcock

---

[7] Docket no. 27, filed May 26, 2016.

[8] Youngevity's Opposition to Plaintiffs' Motion for Leave to Amend, docket no. 34, filed June 15, 2016.

[9] *Id.*

[10] Complaint ¶ 22; Motion to Dismiss p. 3.

became Youngevity distributors in 2012 when Youngevity acquired the company they owned.[11]

Dave Pitcock left Youngevity based on disputes with Youngevity's management in the fall of

2014, and Barb Pitcock continued to manage the distributorships through March 2016.[12] Mr.

Vaughn joined Youngevity in 2011 when a different multi-level marketing company for which

he worked was acquired.[13] Mr. Graham owns TNT, through which he has managed Youngevity

distributorships.[14] Mr. Smith and Mr. Graham owned and operated TNT together until Mr.

Graham bought out Mr. Smith's interest in 2015.[15]

Mr. Smith founded Wayaka after selling his interest in TNT to Mr. Graham and getting

out of business with Youngevity.[16] Wayaka markets "organic and kosher healing products grown

and cultivated on the unique 2,200 acre island in the Fiji archipelago called the Wayaka

Island."[17] Some of the Distributor Plaintiffs expressed interest in Wayaka as a new venture in

addition to their Youngevity distributorships.[18] Youngevity contends that the way the Distributor

Plaintiffs pursued their new Wayaka ventures violated Youngevity's Policies and Procedures.[19]

Youngevity responded in or about February 2016 by terminating their distributorships and

reappropriating the commissions associated with the distributorships.[20]

---

[11] Complaint ¶ 52.

[12] *Id.* ¶¶ 58–59.

[13] *Id.* ¶ 43.

[14] *Id.* ¶ 4.

[15] *Id.* ¶ 36.

[16] *Id.* ¶¶ 38–39.

[17] *Id.* ¶ 26.

[18] *Id.* ¶¶ 37, 39, 49–50, 57, 60.

[19] Opposition pp. 3–5.

[20] Complaint ¶ 40.

TNT had developed certain marketing tools for their Youngevity distributorships, including the website wallachonline.com, the phone number 1-800-WALLACH, and other media items.[21] TNT alleges that Defendants interfered with TNT's efforts to sell these assets to other Youngevity distributors by communicating to potential buyers that Youngevity would refuse to approve the sale.[22]

Youngevity distributors operate under the company's Policies and Procedures.[23] The Policies and Procedures impose no restriction on a distributor's participation or sales activity in other businesses or programs.[24] However, distributors are prohibited under the Policies and Procedures from "cross-recruiting" from Youngevity's ranks or using Youngevity distributor lists for unauthorized purposes.[25] The Policies and Procedures include a dispute resolution clause in Section J9 (the "Arbitration Agreement"), which provides in pertinent part:

> **In the event of a dispute with the Company**, Distributor and the Company agree to participate in mediation in an earnest attempt to resolve the dispute prior to **submitting it to binding arbitration** pursuant to the Commercial Arbitration Rules then in effect of the American Arbitration Association . . . Such Arbitration shall occur in San Diego, California.[26]

This case is a dispute between "the Company," Youngevity, and its distributors or former distributors and their affiliates. Plaintiffs sued defendants in this action, asserting claims for (1) declaratory judgment; (2) breach of contract; (3) breach of the covenant of good faith and fair dealing; (4) conversion; (5) tortious interference with existing contractual relations as to Distributor Plaintiffs' downlines; (6) tortious interference with existing contractual relations as to

---

[21] *Id.* ¶¶ 30, 37, 41.

[22] *Id.* ¶¶ 41, 42.

[23] Policies and Procedures, Motion to Dismiss, Ex. A, docket no. 20-1, filed April 21, 2016.

[24] Policies and Procedures, E6.

[25] Policies and Procedures, E7, E12.

[26] Policies and Procedures, J9 (emphasis added).

potential Wayaka recruits; (7) tortious interference with prospective economic advantage; (8) civil conspiracy; (9) unfair business practices under California Business & Professional Code §§ 17000 *et seq.*; (10) fraud/negligent misrepresentation; and (11) injunctive relief.[27] This case was filed in Utah state court, but Defendants removed it to federal court on April 19, 2016.[28]

### The California Federal Action

Youngevity filed suit against Wayaka and others in the Southern District of California on March 23, 2016 (the "California Federal Action").[29] The California Federal Action names each of the Plaintiffs in this case except Barb Pitcock[30] as defendants in that case, and adds some defendants who are not parties to this suit.[31] The California Federal Action was filed six days after Plaintiffs filed this suit in the Fourth Judicial District Court of Utah on March 17, 2016,[32] but 27 days before this suit was removed to the District of Utah on April 19, 2016.[33]

In the California Federal Action, Youngevity has asserted multiple claims, including Lanham Act violations, common law torts, and violations of California business and civil codes.[34] In response to Youngevity's Third Amended Complaint in the California Federal Action, Wayaka and the other Plaintiffs in this action, including Barb Pitcock, filed a counterclaim against Youngevity (the "California Counterclaim").[35] The California Counterclaim, like this suit, includes claims for declaratory judgment regarding the interpretation

---

[27] Complaint ¶¶ 62–131.

[28] Notice of Removal, docket no. 3, filed April 19, 2016.

[29] Complaint, California Federal Action, ECF no. 1, filed March 23, 2016.

[30] Barb Pitcock is, however, a party to the California Federal Action as a counter claimant.

[31] Third Amended Complaint, California Federal Action, ECF no. 64, filed December 21, 2016.

[32] Notice of Removal at ¶ 3, Ex. A.

[33] *Id.* at p. 5.

[34] Third Amended Complaint, California Federal Action.

[35] Answer and Counterclaim, California Federal Action, ECF no. 70, filed January 18, 2017.

and application of the Youngevity Policies and Procedures; breach of Youngevity's Policies and Procedures; breach of the covenant of good faith and fair dealing; conversion of the distributorships and related commissions; tortious interference with existing contractual relations as to Distributor Plaintiffs' downlines; tortious interference with existing contractual relations as to potential Wayaka recruits; tortious interference with prospective economic advantage; unfair competition under the California Business and Professional Code, and fraud/negligent misrepresentation as to Youngevity's expansion into Mexico.[36] The California Counterclaim also includes the claims Plaintiffs have sought to add by amendment in this suit: defamation; false light; and business disparagement.[37]

The litigation in the Southern District of California has advanced while in this suit the Motion to Dismiss and Motion to Amend have been pending. The Southern District of California has held a number of hearings and rendered a number of decisions. The parties have conducted discovery, and that court has addressed discovery disputes.[38] The Southern District of California has entered an injunction against Plaintiffs prohibiting the use of the likeness of Youngevity or its founder, as well as the Wallach website and phone number.[39] The parties are submitting—or resubmitting in some instances—motions for summary judgment on each other's claims, which will be argued at hearings on January 3, 2018 (Youngevity's claims) and February 7, 2018 (the Wayaka parties' counterclaims).[40]

---

[36] *Id.* Although the factual basis asserted for the claims is the same as that asserted in this suit, Defendants have excluded causes of action for civil conspiracy and injunctive relief from the California Counterclaim.

[37] *Id.*

[38] Order on Discovery Issues, California Federal Action, ECF no. 198, filed September 22, 2017.

[39] Order Granting Plaintiff's Motion for Preliminary Injunction, California Federal Action, ECF no. 58, filed December 1, 2016.

[40] Scheduling Order Re: Parties' Motions for Summary Judgment, California Federal Action, ECF no. 263, filed October 31, 2017.

## DISCUSSION

### Plaintiffs' Claims Are Subject to an Arbitration Agreement.

Dismissal is also appropriate because Plaintiffs' claims are subject to the Arbitration

Agreement between Youngevity and the Distributor Plaintiffs. The Arbitration Agreement[41] in

Youngevity's Policies and Procedures provides that Youngevity and its distributors, "in the event

of a dispute with [Youngevity]," will submit their dispute to binding arbitration before the AAA,

after an earnest attempt at mediation.[42] Defendants assert that Plaintiffs' claims should be

compelled to arbitration and dismissed in this action based on the Arbitration Agreement.[43]

Plaintiffs respond without elaboration or authority that "for a variety of reasons, the arbitration

provision is unenforceable under California law and does not govern this dispute."[44] Plaintiffs do

not otherwise dispute that their claims are arbitrable.

The Arbitration Agreement provides that an arbitrator will determine the arbitrability of

Distributor Plaintiffs' claims. First, it adopts "the Commercial Arbitration Rules then in effect of

the American Arbitration Association." Those rules clearly defer the decision of arbitrability to

the arbitrator:

> R-7. Jurisdiction
> (a) The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim.[45]

---

[41] Policies and Procedures, J9.

[42] *Id.*

[43] Motion to Dismiss pp. 11–15.

[44] *Id.*

[45] R-7 (a) Commercial Arbitration Rules and Mediation Procedures, American Arbitration Association (2013).

Because the parties "clearly and unmistakably agreed to arbitrate arbitrability, all questions of arbitrability—including the question of whether claims fall within the scope of the agreement to arbitrate—[must] be resolved by an arbitrator."[46]

Plaintiffs argue that the District of Utah lacks authority to compel arbitration in San Diego, California, which is the forum identified in the Arbitration Agreement.[47] Plaintiffs are correct, but this argument only eliminates a remedy on the motion. The Tenth Circuit follows the majority approach that "[w]here the parties agreed to arbitrate in a particular forum only a district court in that forum has authority to compel arbitration under § 4."[48] In other words, "a district court lacks authority to compel arbitration in other districts, or in its own district if another has been specified for arbitration."[49] This court thus lacks authority to order the parties to arbitrate in San Diego, California. But because Defendants have asserted their rights under the Arbitration Agreement, Plaintiffs' claims must be stayed or dismissed. If claims filed in court belong in arbitration, then that court lacks power to proceed on the merits of the claims.[50]

**The Arbitrator Will Determine Arbitrability of Wayaka's Claims**

Wayaka is not a signatory to the Arbitration Agreement because—although Wayaka was founded by Mr. Smith, a former Youngevity distributor[51]—Wayaka has never been a distributor for Youngevity. Wayaka seeks recovery under the Sixth Cause of Action for tortious interference with existing contractual relations as to potential Wayaka recruits and the Ninth Cause of Action

---

[46] *Belnap v. Iasys*, 844 F.3d 1272, 1284 (10th Cir. 2017).

[47] Opposition pp. 18–19.

[48] *Ansari v. Qwest Comms. Corp.*, 414 F.3d 1214, 1219 (10th Cir. 2005).

[49] *Id.* at 1220 (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 328 (7th Cir. 1995)).

[50] *Meyer v. Dans un Jardin, S.A.*, 816 F.2d 533, 538 (10th Cir. 1987).

[51] *Id.* ¶ 26.

under the California Business and Professional Code based on the same allegations.[52] Wayaka

claims that Youngevity interfered with Wayaka's ability to recruit distributors by terminating the

distributorships of distributors who associated with Wayaka.[53] Wayaka's claims are likely

arbitrable under federal common law because the claims are "intimately founded in and factually

intertwined with" the claims between Youngevity and its distributors.[54]

Even if Wayaka cannot be compelled to arbitrate as a nonsignatory, arbitration by the

other Plaintiffs is nonetheless appropriate. "Under the Arbitration Act, an arbitration agreement

must be enforced notwithstanding the presence of other persons who are parties to the underlying

dispute but not to the arbitration agreement."[55] At the very least, Wayaka's claims should be

stayed pending arbitration by the Distributor Plaintiffs.

Because Plaintiffs' claims are subject to the Arbitration Agreement, this action must be

either stayed or dismissed. The circumstances support dismissal. While a court cannot dismiss an

action where the defendant has moved only for a stay pending arbitration under Section 3 of the

Federal Arbitration Act (the "FAA"),[56] Defendants did not move for a stay; rather, they moved

to dismiss and compel arbitration.[57] The rule requiring a stay where a party has filed suit on a

claim subject to arbitration "was not intended to limit dismissal of a case in the proper

circumstances."[58] "The weight of authority clearly supports dismissal of the case when all of the

---

[52] *Id.* ¶¶ 73–78, 89–94.

[53] Complaint ¶¶ 73–78, 89–94.

[54] *International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH*, 206 F.3d 411, 417 (4th Cir. 2000)
(citing *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993)).

[55] *Moses H. Cone Memorial Hosp.*, 460 U.S. at 20.

[56] *Adair Bus Sales, Inc. v. Blue Bird Corp.*, 25 F.3d 953, 955 (10th Cir. 1994) (citing 9 U.S.C. § 3).

[57] Motion to Dismiss.

[58] *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992).

issues raised in the district court must be submitted to arbitration."[59] The action is therefore DISMISSED because the claims are subject to the Arbitration Agreement.

No decision is rendered on Defendants' argument under Rule 12(b)(6) that Plaintiffs fail to state a claim for relief under their causes of action sounding in tort.[60] This court does not have authority to decide the merits of claims that are subject to arbitration.[61]

### Plaintiffs' Claims Are Dismissed to Avoid Duplicative Litigation.

Based on the relative progression of the California Federal Action, which includes counterclaims against Youngevity by Plaintiffs, the issue of duplicative litigation arises *sua sponte*.[62] The Supreme Court's decision in *Colorado River Water Conservation District v. United States* supports dismissal of an action where courts find that they are exercising concurrent jurisdiction.[63] In cases of concurrent jurisdiction between federal district courts, "the general principle is to avoid duplicative litigation."[64] To determine whether dismissal is proper in the event of an exercise of concurrent jurisdiction, a federal court may consider such factors as:

1. which court first assumed jurisdiction over property;

2. the inconvenience of the forum;

3. the desirability of avoiding piecemeal litigation; and

---

[59] *Id.* (citing *Sea–Land Service, Inc. v. Sea–Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. Puerto Rico 1986); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir.1988) (expressly holding that 9 U.S.C. § 3 does not preclude dismissal); *Hoffman v. Fidelity & Deposit Co. of Md.*, 734 F. Supp. 192, 195 (D.N.J.1990); *Dancu v. Coopers & Lybrand*, 778 F. Supp. 832, 835 (E.D.Pa.1991)).

[60] Motion to Dismiss pp. 15–18.

[61] *Meyer*, 816 F.2d at 538.

[62] That existence of that litigation also suggests the issue of waiver of the Arbitration Agreement.

[63] 424 U.S. 800, 817 (1976).

[64] *Id.* at 818.

4.  the order in which jurisdiction was obtained by the concurrent forums.[65]

"No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction and the combination of factors counselling against that exercise is required."[66] Certain "exceptional circumstances" also support dismissal, including "the absence of any substantial progress in the federal-court litigation."[67]

The relevant *Colorado River* factors weigh in favor of dismissal. The first factor, which court first assumed jurisdiction over the property at issue in the case, does not apply because these competing cases do not involve claims *in rem*.

The second factor, the inconvenience of the forum, carries little apparent weight where the parties have demonstrated the ability to litigate in either district.

The factor of "avoiding piecemeal litigation" carries the most weight. Litigation between the parties has progressed further in the Southern District of California than it has here. Discovery is underway,[68] and that court has held multiple hearings and issued multiple decisions in the case. The Southern District of California has entered an injunction against Plaintiffs.[69] And that court has instituted a scheduling plan for addressing the multiple dispositive motions pursued by the parties. The parties are submitting, or resubmitting, their motions for summary judgment, which will be argued at hearings that have already been scheduled in the Southern

---

[65] *Id.*

[66] *Id.* at 818–19.

[67] *Id.* at 819–20. *See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983).

[68] Order on Discovery Issues, California Federal Action, ECF no. 198, filed September 22, 2017.

[69] Order Granting Plaintiff's Motion for Preliminary Injunction, California Federal Action, ECF no. 58, filed December 1, 2016.

District of California.[70] Under the circumstances, this court risks duplicative litigation by retreading ground already covered by the Southern District of California.

The final factor, the order in which jurisdiction was obtained by the concurrent forums, also favors dismissal of this action. The California Federal Action was filed six days after Plaintiffs filed this suit in the Fourth Judicial District Court of Utah on March 17, 2016,[71] but 27 days *before* this suit was removed to the District of Utah on April 19, 2017.[72] And, as explained above, the Southern District of California has exercised its jurisdiction in the dispute well before this court, which in the meantime has had pending the Motion to Dismiss and Motion to Amend. These factors support dismissal under the *Colorado River* doctrine.

### Personal Jurisdiction Is Moot.

Defendants moved to dismiss the claims against the individual defendants—Steve Wallach, Michelle Wallach, and Dave Briskie—on the additional basis that the District of Utah lacks personal jurisdiction over these defendants.[73] Because this action is dismissed based on the parties' agreement to arbitrate and the Southern District of California's concurrent jurisdiction, the court will not exercise jurisdiction over the individual defendants. No decision is required on Defendants' personal jurisdiction arguments.

### No Attorneys' Fees or Costs Are Awarded.

Defendants argue in their Motion to Dismiss that they are entitled to attorneys' fees and costs incurred in filing the Motion to Dismiss.[74] Youngevity's Policies and Procedures provide

---

[70] Scheduling Order Re: Parties' Motions for Summary Judgment, California Federal Action, ECF no. 263, filed October 31, 2017.

[71] Notice of Removal at ¶ 3, Ex. A.

[72] *Id.* at p. 5.

[73] Motion to Dismiss pp. 7–10.

[74] *Id.* p. 19.

13

that Youngevity "reserves the right to pursue reasonable legal recourse, as well as reimbursement by a Distributor for any expenses, including attorney's fees and legal fees, generated from a violation."[75] This provision is not mandatory. Youngevity only "reserves the right to pursue" its attorneys' fees and costs,[76] which leaves discretion to the court. Furthermore, the clause provides for a potential award of attorneys' fees and costs "generated from a violation."[77] Though Youngevity failed to disclose in its briefing,[78] a potential award of attorneys' fees and costs is reserved for "extreme cases of violations by a Distributor."[79] Because the claims in this action are deferred to arbitration or adjudication in the Southern District of California, no violation of the Policies and Procedures, let alone an extreme case, has been found. Defendants' request for attorneys' fees and costs is therefore DENIED.

**The Motion to Amend Is Terminated.**

Plaintiffs seek with their Motion to Amend[80] to add three claims to their action against Defendants: defamation, false light, and business disparagement.[81] These proposed claims "do not attempt to cure deficiencies" raised in the Motion to Dismiss.[82] The claims concern recourse for the statements Defendants have allegedly made about Plaintiffs as a result of their dispute, including allegations in court and messages distributed to Youngevity distributors about the parties' dispute.[83] Because Defendants have challenged the proposed new claims based on

---

[75] Policies and Procedures, C6.

[76] *Id.*

[77] *Id.*

[78] Motion to Dismiss p. 19.

[79] Policies and Procedures, C6.

[80] Docket no. 20.

[81] Proposed Second Amended Complaint, docket no. 20-1, filed May 26, 2016.

[82] Motion to Amend p. 4.

[83] *Id.*

futility,[84] whether to permit the amendment requires analysis of the merits of the claims.
Moreover, the claims are already included in the California Counterclaim.[85] The futility of the
proposed claims, which are a "dispute with the Company" by distributors and their affiliates, is a
matter for arbitration,[86] or for litigation in the California Federal Action. Accordingly, the
Motion to Amend[87] is TERMINATED without a decision on the merits.

## ORDER

IT IS HEREBY ORDERED that the Motion to Dismiss[88] is GRANTED based on the
agreement to arbitrate Plaintiffs' claims and concurrent litigation in California. Plaintiffs' claims
are DISMISSED without prejudice. No decision is reached as to whether the court has personal
jurisdiction over the individual Defendants or whether Plaintiffs' tort claims fail to state a claim
under Rule 12(b)(6).

IT IS FURTHER ORDERED that the Motion to Amend[89] is TERMINATED without a
decision on the merits. The issues raised in the Motion to Amend are deferred to arbitration.

The Clerk is directed to close this case.

Dated November 7, 2017.

BY THE COURT:

David Nuffer
United States District Judge

---

[84] Youngevity's Opposition to Motion to Amend, docket no. 34, filed June 15, 2016.

[85] Answer and Counterclaim, California Federal Action, ECF no. 70, filed January 18, 2017.

[86] Policies and Procedures, J9.

[87] *Id.*

[88] Docket no. 20.

[89] Docket no. 26.